UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | |
|---|---|
| **DESTINATION DESIGNS, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:08-CV-197 |
| | ) (Phillips) |
| **NATHAN GLICK, and** | ) |
| **INFINITI BLU DEVELOPMENT GROUP, LLC,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This case is before the court on defendant Glick's *pro se* motion to dismiss for lack of personal jurisdiction. Plaintiff opposes the motion, stating that personal jurisdiction is proper and that this matter should not be dismissed. The court has carefully considered the pending motion and related pleadings in light of the entire record and controlling law. For the reasons which follow, defendant's motion will be denied.

Background

On November 20, 2006, plaintiff entered into a contract with Infiniti to provide interior design services for Infiniti Blu Resort Condominiums in Panama City Beach, Florida. The contract between plaintiff and Infiniti is signed by Nathan Glick, the president of Infiniti. The contract provided for the payment of an initial retainer in the amount of $48,375, along

with additional payments upon completion of Phase I and Phase II of the contract. Infiniti later asked to renegotiate timing of payment for design services. The parties agreed that the initial retainer would be reduced to $5,000 with the remaining balance to be paid in the same manner and time as the other design fees. Plaintiff agreed to these changes in exchange for Glick's personal guarantee of the contract. The personal guarantee stipulates that Glick personally induced the plaintiff to enter into the contract with Infiniti by individually guaranteeing all payments due plaintiff from Infiniti. The personal guarantee states that all payments made pursuant to the guarantee were to be made at plaintiff's address in Knoxville, Tennessee.

The initial retainer payment by defendants of $5,000 was mailed to plaintiff's address in Knoxville Tennessee. Plaintiff proceeded to perform design services for Infiniti and completed Phase I in the spring of 2007. Plaintiff was in the process of performing design services for Phase II of the contract when Infiniti requested that work be suspended in November of 2007. The majority of the work performed by plaintiff was performed at plaintiff's place of business in Knoxville, Tennessee. Plaintiff submitted an invoice to Infiniti in January of 2008 in the amount of $140,125 which represented the balance of the initial retainer fee along with charges associated with Phase I of the contract.

Pursuant to the design contract, plaintiff alleges it is also entitled to full payment for Phase II of the contract in the amount of $48,375 as it had already performed services included in this phase at the time the work was suspended by Infiniti. To date,

-2-

Case 3:08-cv-00197-TWP-HBG   Document 9   Filed 10/09/08   Page 2 of 10   PageID #: 54

plaintiff alleges no payment has been received from defendants, other than the $5,000 partial payment of the initial retainer fee. The instant lawsuit was filed by plaintiff on May 16, 2008.

In his motion to dismiss, defendant Glick states that he is a resident of Ohio and has never done business in Tennessee, nor has defendant Infiniti done business in Tennessee. The alleged contract between the parties was executed by the parties in Bay County, Florida, and was for work to be performed on an Infiniti project in Panama City Beach, Florida. Therefore, defendant Glick asserts the court lacks subject matter jurisdiction, as he has no contacts in the State of Tennessee.

Analysis

Defendant Glick has styled his motion as a motion to dismiss for lack of subject matter jurisdiction; however, the body of the motion appears to address whether this court has personal jurisdiction over the defendants. As explained below, this court has both subject matter jurisdiction over the case, and personal jurisdiction over the defendants.

Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1332(a), this court has jurisdiction over the subject matter of this case as there is diversity of citizenship amongst the parties and the amount in controversy exceeds $75,000. Plaintiff is a Tennessee limited liability company, while

defendant Infiniti is a Florida limited liability company, and defendant Glick is a citizen and resident of Ohio.  Plaintiff has sued defendants for breach of contract in the amount of $188,500 exclusive of interest and costs.  Thus, subject matter jurisdiction is established.  Next, the court will address the issue of personal jurisdiction over the defendants.

Personal Jurisdiction

A motion to dismiss pursuant to FRCP 12(b)(2) requires the court to determine whether the plaintiff has alleged sufficient facts to support the exercise of personal jurisdiction over the defendants.  In ruling upon a Rule 12(b)(2) motion, the court has three procedural alternatives: (1) the court may determine the motion on the basis of written submissions and affidavits alone; (2) it may permit discovery in aid of the motion; or (3) it may conduct an evidentiary hearing on the merits of the motion.  *See Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989).  In this case, the court will decide the matter based upon the briefs, affidavits, and other evidence submitted by the parties.

The plaintiff always bears the burden of establishing personal jurisdiction, but the weight of that burden depends upon the manner in which the court elects to proceed.  *Id.*  Where, as here, the court elects to rule without an evidentiary hearing, the plaintiff's burden is lightened considerably.  In such a case, the plaintiff need only present a *prima facie* case for jurisdiction.  *Bridgeport Music, Inc. v. Still N The Water Pub..,* 327 F.3d 472, 478 (6th Cir. 2003); *Kerry Steel v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir. 1997);

-4-

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.,* 91 F.3d 790, 792 (6th Cir. 1996). As with a Rule 12(b)(6) motion, the court should consider the pleadings and affidavits in the light most favorable to the plaintiff, however,"the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, 'by affidavit or otherwise, ... specific facts showing that the court has jurisdiction.'" *Serras,* 875 F.2d at 1214 (quoting *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir. 1974)); *see also Nationwide,* 91 F.3d at 792. Thus, as long as the plaintiff is able to "demonstrate facts which support a finding of jurisdiction," the motion to dismiss should be denied, even in the face of controverting evidence presented by the moving party. *Serras,* 875 F.2d at 1214; *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988).

When determining whether there is personal jurisdiction over a defendant, a federal court must apply the law of the state in which it sits, subject to constitutional limitations. *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 110, 1115 (6th Cir. 1994). Tennessee law provides as follows:

> Person who are nonresidents of Tennessee ... are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from: (1) the transaction of any business within the state ... (4) entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting; (5) entering into a contract for services to be rendered or for materials to be furnished in this state; (6) any basis not inconsistent with the constitution of this state or of the United States...
>
> (b)"Person," as used herein, includes corporations and all other entities which would be subject to service of process if present in this state.

-5-

> (c) Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative.

Tenn. Code Ann. § 20-2-214. Where, as is the case with Tennessee, a state's long-arm statute reaches as far as the limits of the United States Constitution, the court "need only determine whether the assertion of personal jurisdiction ... violates constitutional due process." *Nationwide,* 91 F.3d at 793. "Due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1940); *Bird v. Parsons,* 289 F.3d 865, 871–72 (6th Cir. 2002). Personal jurisdiction over a non-resident defendant may be asserted under either general or specific theories of jurisdiction. *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir. 1992).

General jurisdiction exists when a defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." *Kerry Steel, Inc. v. Paragon Industries, Inc.,* 106 F.3d 147, 149 (6th Cir. 1997). Plaintiff does not allege that Infiniti and Glick had continuous and systematic contacts with Tennessee, so general jurisdiction cannot be established.

In the absence of general jurisdiction resulting from continuous and systematic contacts with the forum state, specific personal jurisdiction still may be found

-6-

when a commercial actor purposely directs his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985); *J.I. Case Corp v. Williams,* 832 S.W.2d 530, 532 (Tenn. 1992). In such a case, "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

The Sixth Circuit utilizes a three-part test to determine whether personal jurisdiction would violate the requirements of the due process clause. First, the defendant must purposely avail himself of the privilege of acting in the foreign state or causing a consequence in the foreign state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the foreign state to make the exercise of jurisdiction over the defendant reasonable. *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir. 1968).

Applying the *Mohasco* test, the Supreme Court of Tennessee found that a publisher whose only contact with the State of Tennessee was to send a book to a Tennessee bookbinder for printing and binding was subject to personal jurisdiction in the State of Tennessee for a dispute regarding that contract. The court found that it was not necessary for the defendant or its agent to have had a physical presence in Tennessee for the business transaction to satisfy the minimum contact. Nor was it material that the

contract was not executed in the forum state. *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers,* 621 S.w.2d 560 (Tenn. 1981).

In *United Agricultural Services v. Scherer*, 17 S.W.3d 252 (Tenn.App. 1999), the Tennessee Court of Appeals refined the *Mohasco* test into five parts:

> The *Moore* court noted that three primary factors are to be considered in determining whether the requisite minimum contacts were present: the quantity of the contacts, their nature and quality, and the course and connection of the cause of action with those contacts. Two lesser factors to be considered are the interest of the forum state and convenience.

*Id.* at 256. The plaintiff in *Scherer* was contacted by a mortgage company to provide an environmental site assessment for land to be purchased by a Michigan corporation. The subject property was located in Michigan. The plaintiff traveled to Michigan to inspect the property and then returned to Tennessee where the analysis and preparation of the report was done. This report was ultimately used by the Michigan corporation to obtain its loan. As a result of that report, plaintiff was also hired to perform cleanup operations on the property in Michigan. When the loan was closed, the plaintiff would not pay for its services. Scherer, president of the Michigan corporation, provided the plaintiff with a promissory note which he personally guaranteed. Plaintiff then filed suit against the defendant on the promissory note. In finding personal jurisdiction over the defendant, the court stated:

> The proof in this case is that Ag Services and Michigan Apple, acting through Scherer, made an arrangement where Ag Services would perform a service in connection with the environmental requirements necessary for a loan that Scherer's corporation was trying to obtain. The work contracted for required visit to Michigan but more importantly

-8-

> Ag Services did the field work in Michigan then returned to its office in Memphis to perform necessary analysis, compilations, interpretations, and other work in order to prepare and submit the necessary reports. It is undisputed that this work was all done in the Memphis office.
>
> Admittedly, in the instant case the contract was between a foreign corporation and Ag Services, but the defendant Scherer, was part and parcel of the negotiations and activities leading to the contract. Scherer acted as agent for the corporation and his action created a consequence in Tennessee. Although Scherer could not be subjected to this jurisdiction for his activity in negotiating the contract as agent, the corporation would meet the minimum contacts test.
>
> However, there is a more compelling reason for establishing personal jurisdiction over Scherer. Michigan Apple's note paid for the services under the contract and was guaranteed by the defendant Scherer. The note specifically provided for payment in the State of Tennessee. Thus, Scherer guaranteed the payment of sums to be paid in Tennessee by virtue of the note. This comes within the provisions of T.C.A. § 20-2-223(a)(2) as a contract to supply "things in the state." The claim for relief by Ag Services arises from the default on the payment of this note. The note was prepared in Tennessee, is governed by Tennessee law by the terms thereof, and payments were to be made in Tennessee. We believe this satisfies the requirement of T.C.A. § 20-2-223.

*Id.* at 258-59.

Tennessee's Long-Arm statute applies to defendants as they contracted with plaintiff for services which they knew would be performed in Tennessee. Further, defendant Glick guaranteed the payments due plaintiff from Infiniti. *See* Tenn. Code Ann. §§ 20-2-214(2), (4), and (5). The defendants knowingly and purposely engaged a Tennessee company to provide customized design services for their condominium project.

The defendants knew, or should have known, that the majority of the design services were going to be performed by plaintiff at its offices in Tennessee. The personal guarantee was prepared in Tennessee, is governed by Tennessee law, and payments were to be made in Tennessee. The guarantee was signed by the president of Infiniti, Nathan Glick. Plaintiff would not have started work on the Infiniti project without Glick's inducement of a personal guarantee and payment of the initial retainer to the Tennessee address of plaintiff. Defendants purposely availed themselves of the privilege of transacting business in Tennessee, and defendants' refusal to pay for the services rendered has caused consequences in Tennessee. Tennessee courts have long expressed the state's interests in resolving contractual disputes involving its residents. *Nicholstone,* 621 S.W.2d at 563. Therefore, the court finds that personal jurisdiction over these defendants has been established, and the court's retention of jurisdiction is appropriate. Accordingly, defendant Glick's motion to dismiss [Doc. 7] is **DENIED.**

**ENTER:**

                    s/ Thomas W. Phillips
                    United States District Judge

-10-

Case 3:08-cv-00197-TWP-HBG   Document 9   Filed 10/09/08   Page 10 of 10   PageID #: 62